UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

TIG Insurance Company

    v.                                    Civil No. 14-cv-459-JL
                                        Opinion No. 2015 DNH 186
EIFlow Insurance Limited


**MEMORANDUM ORDER**

    In this action based on breach of a reinsurance contract, the parties dispute which statute of limitations applies to the plaintiff's claims. The plaintiff, TIG Insurance Company, brought this suit after unsuccessfully seeking payment from defendant EIFlow Insurance Limited under a reinsurance contract that the parties' respective predecessors-in-interest entered into in England in 1982. This court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) (diversity) because TIG is a citizen of a state, EIFlow is a citizen of a foreign state, and the amount in controversy exceeds $75,000.

    EIFlow has moved for judgment on the pleadings, see Fed. R. Civ. P. 12(c), or in the alternative for summary judgment, see Fed. R. Civ. P. 56(d), arguing that New Hampshire's three-year statute of limitations for breach of contact claims bars TIG's claim for breach of the reinsurance contract. See N.H. Rev. Stat. Ann. § 508:4. TIG contends that England's six-year statute of limitations governs instead. See Limitation Act 1980 § 5. In

the alternative, TIG argues, if the New Hampshire statute of limitation applies, its cause of action accrued within the limitations period.

After careful consideration of the parties' written filings and oral argument, the court denies EIFlow's motion. The considerations adopted by the New Hampshire Supreme Court to guide its choice-of-law analysis with respect to statutes of limitation favor the application of England's six-year statute in this case. And, under that statute of limitations, EIFlow concedes that TIG's claim is timely.

## I. Applicable legal standard

EIFlow first contends that TIG's claim is time-barred by New Hampshire's statute of limitations, as conclusively established by the facts alleged in the complaint. A motion for judgment on the pleadings under Rule 12(c), which permits a party to move for such judgment after the pleadings are closed, is evaluated under essentially the same standard as a Rule 12(b)(6) motion for failure to state a claim. See, e.g., Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009). For plaintiff's complaint to survive a such a motion the plaintiff must allege facts sufficient to "state a claim to relief" by pleading "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). A Rule 12(c) motion based on a statute of limitations succeeds only when "the pleader's allegations leave no doubt that an asserted claim is time-barred." Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010) (internal quotations omitted).

Submitting evidence outside the confines of the complaint, EIFlow also seeks a similar outcome on summary judgment. See Fed. R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."); see also Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 38 (1st Cir. 2004). On a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial, and "material" if it could sway the outcome under applicable law. See Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010).

In ruling on a motion for judgment on the pleadings, the court must accept as true all well-pleaded facts set forth in the

complaint and must draw all reasonable inferences in the plaintiff's favor. See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010). Similarly, when analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving party." Estrada, 594 F.3d at 62.

## II. Background

The following overview of the facts is drawn from the complaint and the documents referred to therein and, where noted, the additional evidence submitted by the parties. As required, it draws all reasonable inferences in TIG's favor.

TIG's predecessor-in-interest, United States Fire Insurance Company, issued an insurance policy covering a landfill in California operated by a subsidiary of the insured, Southdown, Inc. (the "Southdown policy"). U.S. Fire reinsured a portion of that risk -- 16.2162% of 92.5%, according to TIG -- through a facultative reinsurance contract with EIFLow's predecessor-in-interest, Insurance Corporation of Ireland, PLC (later known as Icarom). This reinsurance contract -- entered into in London in 1982[1] -- is the subject of this lawsuit.

---

[1] In support of its objection to EIFlow's motion, TIG submitted an affidavit from Stephen Manatale, an individual experienced with the London reinsurance market during the

4

Southdown conveyed the landfill to a subsidiary of Browning Ferris Industries, Inc. in 1987. In 2003, BFI and several formerly-related entities added U.S. Fire as a defendant in coverage litigation brought in Texas over losses related to the landfill. On February 11, 2009, TIG -- having by then succeeded to U.S. Fire's interest -- settled with BFI for $13.5 million. TIG paid out the settlement on February 19, 2009.

TIG allocated $11.9 million of that payout to coverage under the property section of the Southdown insurance policy and submitted a claim settlement request for $2.07 million to Icarom on May 29, 2009. Icarom requested additional information about the claim and the reinsurance policy. After providing at least some of this information, TIG followed up with a second request for an additional $26,531.23 on March 23, 2010.[2] On October 20, 2010, Icarom informed TIG that it believed TIG had mis-allocated

---

relevant period. The precise details of how a reinsurance "slip" was "scratched" in the London market, though interesting, are not directly implicated here. It is enough that EIFlow agrees that the contract was negotiated and effectively signed in London and that the parties would have expected performance there.

[2]In its complaint and on page 3 of its objection, TIG asserted that it submitted the claim settlement request "[o]n or about July 2010." EIFlow submitted copies of these requests, dated May 29, 2009, and March 23, 2010, in support of its motion. TIG does not dispute the accuracy of these documents and adopts these dates later in its objection.

Icarom's share of the reinsurance and requested an amended billing.

According to the additional evidence submitted by EIFlow, after further communications (and the parties dispute how many), on September 13, 2013, TIG sent a letter to EIFlow -- which had by that time succeeded to Icarom's rights and obligations with respect to the reinsurance contract -- responding to outstanding inquiries and asking for payment within 14 days.  EIFlow requested additional information and time to locate the relevant records and evaluate the claim -- a request that TIG granted.  Almost seven months later, TIG set a May 1, 2014 deadline for payment.  When EIFlow still did not pay, and after unsuccessful settlement negotiations, TIG filed its complaint in this action on October 17, 2014.

**III. <u>Analysis</u>**

    **A.   Choice of law**

The court must first determine which statute of limitations governs TIG's breach of contract claims.  Sitting in diversity, this court applies the choice of law rules of the forum state.  [Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941)](#).  New Hampshire treats the statute of limitations as procedural, and therefore applies New Hampshire's statute of

limitations, "in any case in which either party is a New Hampshire resident or the cause of action arose in this State." Waterfield v. Meredith Corp., 161 N.H. 707, 710 (2011) (quoting Keeton v. Hustler Magazine, Inc., 131 N.H. 6, 15 (1988). If neither party is a New Hampshire resident and the cause of action did not arise in New Hampshire, the statute of limitations is treated as substantive and the court must balance the relevant considerations to determine what law governs. Id. at 713.

EIFlow argues that, though incorporated in California, TIG is a New Hampshire resident because TIG maintains its principal place of business in Manchester. Under New Hampshire law, "[t]he issue of domicile is a mixed question of law and fact, which may be resolved by the trial court at the summary judgment stage." Waterfield, 161 N.H. at 712 (internal citations omitted). New Hampshire recognizes the corporation's state of incorporation as its state of residence. Specifically, the New Hampshire Business Corporation Act defines a "domestic corporation" as a corporation "incorporated under or subject to the provisions of" the Act. A "foreign corporation," on the other hand, is "a corporation incorporated under a law other than the law of this state, which would be a business corporation if incorporated under the laws of this state." N.H. Rev. Stat. Ann. § 293-A:1.40(4), (10). The New Hampshire Supreme Court has similarly located a corporation's

residence in the state of its incorporation.  See Blanchette v. New England Tel. & Tel. Co., 90 N.H. 207, 207 (1939) ("A corporation has its residence and domicil[e] in the state in which it is incorporated, and if it extends its activities to another jurisdiction it 'is in the same position as any non-resident who sends his agents into a State to do business for him.'" (quoting Joseph H. Beale, The Law of Foreign Corporations § 73 (1904))); see also Educ. Soc. of Denomination Called Christians v. Varney, 54 N.H. 376, 378 (1874) ("The plaintiff society is described in the writ as a corporation existing under and by virtue of the laws of Massachusetts.  This is a sufficient description of the locality of the corporation.").  EIFlow offers no authority for the contrary proposition.  Therefore, despite TIG's connections to New Hampshire, the court is obliged to treat TIG as a resident of California for purposes of this motion.[3]

---

[3]TIG has not always denied its New Hampshire residence.  In objecting to EIFlow's earlier motions to dismiss and to quash, and when seeking pre-suit security from EIFlow, TIG argued that New Hampshire's Unauthorized Insurers statute was designed "to protect New Hampshire residents (like TIG) from having no recourse against foreign insurers who try to avoid their contract obligations (like EIFlow) . . . ." Plaintiff TIG's Opposition to Defendant's Motion to Quash Substituted Service of Process and Sur-Reply to Defendant's Motion to Dismiss (document no. 37) at 10.  See also id. at 12 ("TIG is a resident of this state"); TIG Insurance Company's Opposition to Motion to Enlarge Defendant's Time to Respond to the Complaint (document no. 8) at 4 ("As . . . a resident of New Hampshire, TIG is entitled to the protection of Section 406-B:6.").  Though TIG here has taken inconsistent

Having determined that TIG is not a New Hampshire resident for purposes of the choice of law analysis, and because neither party argues that the cause of action arose in New Hampshire,[4] the statute of limitations here is treated as substantive. Bartlett v. Commerce Ins. Co., 114 A.3d 724, 729 (N.H. 2015). New Hampshire's three-year statute of limitations for breach of contract actions conflicts with England's six-year statute of limitations for the same action. Therefore, the court must "balanc[e] the traditional choice-of-law considerations" to determine which statute of limitations applies. Id.

The "traditional choice-of-law considerations" articulated by the New Hampshire Supreme Court are: (1) "predictability of results," (2) "maintenance of reasonable orderliness and good relationships among the states," (3) "simplification of the judicial task," (4) "advancement of the forum state's

---

positions before the court, EIFlow has not argued that TIG is judicially estopped from doing so -- and TIG is not so estopped -- because the court did not rely on TIG's previous position. See Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 35 (1st Cir. 2004) ("the assertion of inconsistent positions and judicial acceptance of the original position" are the basic elements of judicial estoppel).

[4]In another about-face, though it alleged in support of proper venue in this district that "a substantial part of the events or omissions giving rise to the claim occurred" here, Complaint (document no. 1) at ¶ 6, TIG now argues that EIFlow breached the reinsurance contract overseas because EIFlow operates only in Gibraltar and the United Kingdom.

governmental interest," and (5) "preference for what the court regards as the sounder rule of law."  Clark v. Clark, 107 N.H. 351, 354-55 (1966).  As TIG correctly points out, in contract cases, New Hampshire has more recently adopted "the approach taken by the Restatement (Second) of Conflict of Laws, which is that the law of the State with the most significant relationship to the contract will govern questions regarding the contract's performance."  Glowski v. Allstate Ins. Co., 134 N.H. 196, 197-98 (1991).  This is "[b]ecause predictability of results, the first Clark factor, is perhaps of greatest concern in contracts cases," not because the Clark analysis no longer applies to those cases. Id.  Nevertheless, the New Hampshire Supreme Court does not appear to apply the Restatement considerations to statute of limitations determinations.  Instead, it continues to balance the Clark factors to resolve those questions.  Keeton, 131 N.H. at 17-21; see also Ferren v. Gen. Motors Corp., 137 N.H. 423, 425 (1993).  This is true in contract cases as well as actions sounding in tort.  See Waterfield, 161 N.H. at 713 (holding that, when no party is a New Hampshire resident, the court must apply the "customary balancing test" as set forth in Keeton); Bartlett, 114 A.3d at 729 (accepting trial court's analysis of the Clark factors for choice of statute of limitations in suit to recover

10

under insurance policy).  Thus, the court here applies the factors as articulated in Clark and elucidated in Keeton.

**The predictability of results**.  As discussed supra, this first factor is of particular concern in contract cases, where "it is important that the parties be able to know in advance what law will govern a transaction so that they can plan it accordingly.  Reliance upon a predictable choice of law protects the justifiable expectations of the parties." Clark, 107 N.H. at 354.  Thus, this factor "emphasizes the importance of applying to the parties' bargain or other dealings the law on which they agreed to rely at the outset." Keeton, 131 N.H. at 17.  Here, the parties did not agree at the outset that the reinsurance contract would be governed by the law of any particular forum.[5]  However, the parties do agree post hoc that, if the court were to perform a Restatement analysis, it would find that England has

---

[5]At oral argument, EIFlow contended that this factor favors application of New Hampshire law because it was predictable that TIG would sue in New Hampshire and thus also predictable that New Hampshire's statute of limitations would apply.  This argument is grounded in the fact that the reinsurance agreement's "service of suit" clause permitted TIG to bring suit in New Hampshire.  This argument is not persuasive in light of the court's understanding of Keeton.  EIFlow's argument is further undermined by its acknowledgment that the service of suit clause in question -- of which EIFlow contested the content in its previous submissions to the court, see, e.g., Defendant's Reply on its Motion to Quash Substituted Service of Process (document no. 43) at 2 n.1 -- would have permitted TIG to sue in any court of competent jurisdiction in the United States, not merely in New Hampshire.

the most significant relationship to the contract. And it does. The "slip" was "scratched" there, the agreement was negotiated there, the parties would have expected performance to take place there, and any claims on the agreement would be submitted -- as they were -- through a London broker.[6] Thus, English law would govern questions regarding the contract's performance. See Glowski, 134 N.H. at 198. Given England's significant relationship to the contract, it requires no giant leap of logic to conclude that the parties would have expected claims rising under the contract to be resolved under English law. Thus, the predictability of results heavily favors applying England's statute of limitations here. See Ferren, 137 N.H. at 426 (observing that, where Kansas law would govern the underlying contractual dispute, the first factor "weighs heavily in Kansas' favor").

**The maintenance of reasonable orderliness and good relationships among the states in the federal system.** This

---

[6]Under a Restatement analysis in the context of insurance contracts, the fifth factor -- the "principal location of the insured risk" -- would usually "bear[] the most significant relationship to the contract, in the absence of an express choice of law by the parties." Glowski, 134 N.H. at 198. But, as both parties acknowledge, the location of the insured risk bears somewhat less of a relationship to the contract in the reinsurance context. And neither party contends that California law ought govern here.

consideration "requires only that 'a court not apply the law of a State which does not have a substantial connection with the total facts and the particular issue being litigated.'" Keeton, 131 N.H. at 18 (quoting LaBounty v. Am. Ins. Co., 122 N.H. 738, 742-43 (1982)).  Both jurisdictions have the requisite substantial connections.  But because the parties agree that England has the "most significant relationship" with the issue being litigated, this factor is basically a wash as between the two jurisdictions and weighs slightly in England's favor.  See Ferren, 137 N.H. at 427 ("[W]hen the factors relevant to the litigation are all located elsewhere," despite a party's connection to New Hampshire, "this factor is insufficient to sustain application of the forum law.").

   **Simplification of the judicial task**.  EIFlow suggests, with little explanation, that under Keeton this consideration "favor[s] applying the forum's statute."  Objection (document no. 56) at 3-4.  But that is an overly-simplified reading of Keeton.  As the court in Keeton explained, New Hampshire's "additional interest in simplifying the judicial function counsels" applying the New Hampshire statute when New Hampshire's interests in the case are already significant -- such as when one party is a New Hampshire resident or the cause of action arose in New Hampshire.  Keeton, 131 N.H. at 16-17.  That is not the case here.  And

applying English law would not particularly complicate the judicial function here -- the English statute of limitations is easily ascertained and applied.  See Sinclair v. Brill, 815 F. Supp. 44, 47 (D.N.H. 1993) (DiClerico, J.) ("[T]he court agrees with the Keeton dissent that '[o]n the third subject, the simplification of the judicial task, there is not much to be argued one way or another.  While nothing could be easier than applying the forum's statute of limitations, no subject of foreign law could probably be ascertained with greater ease than a limitation period.'" (quoting Keeton, 131 N.H. at 31 (Souter, J., dissenting))).  Thus, this factor favors neither jurisdiction's law.

**Advancement of the governmental interest of the forum**.  New Hampshire's interest in applying its own statute of limitations "generally stems from our concern to insure the orderly administration of our courts and to protect the respective interests of defendants and plaintiffs."  Keeton, 131 N.H. at 19.  This factor "becomes important only when New Hampshire has a 'particularly strong policy in reference to local rules of law,'" Stonyfield Farm, Inc. v. Agro-Farma, Inc., 2009 DNH 150, 21 (quoting Lessard v. Clarke, 143 N.H. 555, 558 (1999), such as when the statute of limitations "extinguish[es] the right to sue" on a cause of action or is "an inherent part of [some] statutory

scheme creating [that] right," Keeton, 131 N.H. at 15 (quoting Gordon v. Gordon, 118 N.H. 356, 360 (1978)).  Here, neither New Hampshire's nor England's statutes of limitation for breach of contract create or extinguish a cause of action.  Cf. Stonyfield, 2009 DNH 150, 22 (considering the purpose of the Uniform Trade Secrets Act, which included a statute of limitations, in weighing this factor).  Thus, "New Hampshire's interest 'is limited to the fair and efficient administration of justice'" and "this factor is of limited importance."  Stonyfield, 2009 DNH 150, 22 (quoting Clark, 107 N.H. at 355).

**The court's preference for what it regards as the sounder rule of law.**  This last factor allows the court, where everything else is equal, to "choose to apply another state's rule that it regards as wiser, sounder, and better calculated to serve the total ends of justice," especially where "one state's rule lies in the backwater of the modern stream."  Stonyfield, 2009 DNH 150, 22 (internal quotations omitted).  As such, it "tends to play a 'tie-breaker' role in close cases."  Stonyfield, 2009 DNH 150, 22.  That New Hampshire jettisoned the six-year statute in 1986, see 1986 N.H. Laws 485, signals that New Hampshire generally recognizes three years as the sounder rule of law.  Therefore, if all else were equal, this factor would weigh in New Hampshire's favor.

15

Having considered the five traditional choice of law factors, however, the court concludes that the English statute of limitations should govern this action.  The most important factor in a breach of contract action -- predictability of results -- weighs heavily in favor of English law.  The second factor also favors English law.  Where the third and fourth factors favor neither English nor New Hampshire law, the court need not invoke the tie-breaking fifth factor.

**B.   Application of England's statute of limitations**

Having determined that England's statute of limitations applies to TIG's claims, the court must now determine whether EIFlow has demonstrated that it is entitled to judgment as a matter of law that TIG's claims are barred by the six-year statute of limitations.[7]  See Fed. R. Civ. P. 56(a).  This is a simple task.  EIFlow concedes that TIG's claim accrued no earlier than TIG's settlement with BFI on February 11, 2009.  TIG brought this action on October 17, 2014, less than six years later.  TIG's action is therefore timely under England's six-year statute

---

[7]The court considers EIFlow's motion under the Rule 56 standard, as it may properly do when, as here, "the party opposing the [Rule 12] motion (1) has received materials outside the pleadings, (2) has had an opportunity to respond to them, and (3) has not controverted their accuracy." Maldonado v. Dominguez, 137 F.3d 1, 6 (1st Cir. 1998).  Both parties addressed EIFlow's motion as one for summary judgment in their briefing as well as at oral argument.

of limitations for breach of contract claims and EIFlow is not entitled to judgment on the pleadings or summary judgment to the contrary.[8]

IV. **Conclusion**

For the foregoing reasons, EIFlow's motion for judgment on the pleadings or, in the alternative, for summary judgment[9] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: September 29, 2015

---

[8] Even if the court were to conclude that New Hampshire's shorter statute of limitations governed here, there appears to be a dispute of material fact as to whether a material breach of the reinsurance agreement occurred within that three-year window. The court is skeptical of EIFlow's argument that TIG's settlement with BFI on February 11, 2009 created a demand obligation out of the reinsurance agreement, which would start the limitations clock on that date. And the parties hotly dispute at what point during the protracted negotiations there was a material breach -- that is, "a failure without legal excuse to perform [the] promise which forms the whole or part of [the] contract." Audette v. Cummings, 165 N.H. 763, 767 (2013). Because "[w]hether a delay in payments is a material breach" is a question of fact, Fitz v. Coutinho, 136 N.H. 721, 723 (1993), EIFlow's motion for summary judgment would likely have been denied even if this court had applied New Hampshire's statute of limitations.

[9] Document no. 47.

```
cc:   Anthony J. Galdieri, Esq.
      Julie Rodriguez Aldort, Esq.
      Kevin M. Fitzgerald, Esq.
      Katherine Ann Guarino, Esq.
      Thomas F. Bush, Esq.
```